SAVAGE v. SCOTT ET AL.

1. **Statute of Limitations:** RESIDENCE: CITIZENSHIP. Residence and not citizenship is contemplated in the statute prescribing limitations upon the time of bringing actions, and the statute runs in favor of a debtor who has his domicile in the State.

2. ——: ——: DEMISE. The statute ceases to run when the debtor becomes a non-resident, but revives upon his demise.

3. **Mortgage:** CANNOT BE EXTENDED. The security of a mortgage cannot be extended to embrace debts of the mortgagor to the mortgagee not provided for in the instrument itself.

*Appeal from Washington District Court.*

MONDAY, DECEMBER 11.

ACTION to foreclose a mortgage. The plaintiff claims to recover, in addition to the amount due on the promissory note which is secured by the mortgage, the sum of $56.20 paid by him for taxes levied upon the real estate covered by the incumbrance. The petition shows that the mortgagor was, at the time of the execution of the mortgage, a non-resident of the State, and continued to be to the time of his death. The defendants are his heirs, and a grantee of his widow's interest, and are shown by the petition to be non-residents. The answer of defendants, among other matters, alleges that the mortgagor, at the date of the execution of the incumbrance, was a resident of the State, and so continued for a time after the note secured by the mortgage became due, and then removed to Pennsylvania, and afterwards died in that State, and more than ten years has elapsed after his death was known to plaintiff; that he left no other property besides the real estate covered by the mortgage, and that administration has not been taken out upon his estate. The cause was submitted to the court and the following finding of facts was made:

"*First.* That one William Scott, on the 20th day of June, A. D. 1857, purchased of the plaintiff lots number eight and nine (8 and 9), in out-lot number fourteen (14), in the town

of Washington, Iowa, and on that day executed his promissory note for the purchase money to the plaintiff for the sum of three hundred and fifty dollars, and which said note is in words and figures following, that is to say:

"'June 20, 1857.

"'Ten months after date I promise to pay to Alexander Savage the sum of three hundred and fifty dollars, with ten per cent from date, for value received. Witness my hand.

"'WM. SCOTT.'

"*Second.* That afterwards and on the 16th day of January, A. D. 1858, said Scott, to secure the payment of said note, executed and delivered to plaintiff a mortgage upon said lots, to be void on payment of the note made by William Scott to Alexander Savage, dated June 20th, 1857, for $350; mortgage dated January 16th, 1858, and acknowledged and recorded January 18th, 1858.

"*Third.* That afterwards the plaintiff removed from the State of Iowa to California, and one Henry Savage, a brother of plaintiff, either paid or caused to be paid in his name, or redeemed or caused to be redeemed from tax sale in his name, the taxes assessed against the said lots, and also caused the lots to be assessed in his name; that he thus paid out the sum of fifty-six dollars and twenty-three cents in all; that such payments were made without the knowledge of the plaintiff, and the money so expended was the money of the said Henry Savage. But a short time before this suit was commenced the plaintiff paid his brother a visit and was then informed of what his brother had done, and was satisfied with or approved the same, and then employed his brother to look after his interest in and claim upon the lots.

"*Fourth.* That William Scott, being a married man, left his home in Washington county, Pennsylvania, and came to Washington county, Iowa, in April, A. D. 1857, and entered into business and remained in said county and engaged in said business until some time in September or October, 1858, at which time he returned to Pennsylvania with the intention of returning with his family to Iowa.

"That during the time he was in Iowa he voted at one of the elections, and was during that time engaged with others in partnership in running a saw mill, and during that time frequently spoke of his intention of making Iowa his permanent home, and for that purpose had a bill of lumber sawed to build a house for a home upon the lots that were mortgaged to plaintiff.

"That shortly after his return to the State of Pennsylvania he offered to vote there and his vote was challenged, but whether he was permitted to vote does not appear; that said Scott never returned to Iowa, being taken sick shortly after reaching his old home in Pennsylvania, and never recovering fully from such sickness, but died February 11th, 1862, intestate, leaving a widow and two children, the defendants herein, as his only heirs at law surviving him.

"*Fifth.* That the defendant, R. M. Stinson, is, by purchase from the widow of said William Scott, the owner of her interest in the said lots.

"*Sixth.* That from the time the said note became due, and up to September or October, A. D. 1858, thereafter, the said William Scott was living in Washington county, Iowa, the place where the note was executed, and within the jurisdiction of the courts of this State, and suit might have been instituted upon said note and mortgage against him, and personal service had upon him.

"*Seventh.* That the widow and children of said William Scott have never lived in Iowa or been in this State."

Upon these facts the District Court decided that plaintiff was not entitled to recover for the taxes paid, and that his action upon the note and mortgage was barred by the statute of limitations, and entered a decree accordingly. Plaintiff appeals.

*Stubbs & Leggett* and *G. W. Howe*, for appellant.

*Ed. W. Stone*, for appellees.

BECK, J. — I. Under the statute of limitations in this State, actions of this kind are barred in ten years. Code, § 2529,

par. 4.   But it is provided that "the time during which a defendant is a non-resident of the State shall not be included in computing any of the periods of limitation" prescribed in the statute.   Code, § 2533.   Under this statute the period of limitation, having commenced to run in favor of a resident debtor, is arrested by his becoming a non-resident.

1. STATUTE of limitations: residence: citizenship.

It becomes important to determine whether the statute began to run against the claim which is the foundation of this action.   From the court's finding of facts, it appears that for more than four months after the note became due the mortgagor was in this State, voted at an election, was engaged in business, and had the intention of making his permanent home here.   He was surely a resident of this State so far as to be subject to its jurisdiction and to be capable of exercising all the rights of citizenship.·  It cannot be doubted that, during the time of his residence, he was subject to process of the courts, and an action could have been brought against him. We need not inquire in what state he holds a domicile; he had a residence here of the character that would subject him to process of the courts of this State.   *Love v. Cherry*, 24 Iowa, 204.   While he held this residence the statute of limitations ran against the note and mortgage.   That the statute runs in favor of all residents of the State cannot be questioned, for the plain reason that the section, 2533, above cited declares it shall not run in favor of a non-resident.   That residence in the State, and not citizenship or domicile, determines the fact of the meaning of the statute cannot be doubted.   The distinction which the law draws between the place of residence and that of domicile or citizenship is plain.   A man may have more than one place of residence, but he can have but one domicile, and can hold citizenship in but one State.   *Love v. Cherry*, 24 Iowa, 204.   Personal actions in this State must be brought in the county where the defendant *actually resides*. Code, § 2586.   Of course one having an actual residence in this State may be sued in our courts.   We conclude that the note and mortgage, under the facts found by the court, could have been sued upon in this State at any time for near five

months after maturity, in a personal action against the mortgagor, and that the statute of limitations ran for that time.

II.   The statute ceases to run upon the debtor becoming a non-resident; when that disability is removed it resumes its operation.   To be a non-resident of this State, one must be a resident elsewhere.   The word non-resident implies that one so described holds a residence in another place.   But we cannot say of a deceased person that he is a non-resident, for he holds a residence nowhere.   The disability of non-residence is removed in case of death.

2. ——: ——: demise.

This view is supported upon the consideration that on the death of a debtor claims which, in his life, were enforced by personal actions against him become the subject of proceedings prescribed by law against his administrator or executor. The personal representative takes the place of the deceased. The creditor has it in his power, if property of the estate be found here, to cause an administrator to be appointed, without delay, against whom proceedings may be at once instituted. His legal remedy, which was suspended by the debtor becoming a non-resident, is revived at the debtor's death.  From the moment the remedy is revived, the statute of limitations begins again to run.  These views, and the conclusion we reach, are sustained by the following authorities: *Christophers v. Garr*, 6 N. Y. (2 Seld.), 61; *Teal v. Ayres*, 9 Texas, 588.

III.   The plaintiff seeks in this action to foreclose the mortgage for the amount paid by him for taxes, with interest, as well as the amount of the promissory note secured by the incumbrance.  This relief cannot be granted.  The mortgage contains no condition for securing the sum advanced for taxes or any other debt, except that evidenced by the promissory notes.  The security cannot be extended to cover debts not provided for in the mortgage, in the absence of facts and equities which would require a court of chancery to give it such effect.  Such equities do not exist in this case.

3. MORTGAGE: cannot be extended.

No other points arise in the case for our determination. The judgment of the District Court is

AFFIRMED.